IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID KELLEY,

           Plaintiff,

v.

KIRKMAN GROUP, INC. and DAVID HUMPHREY,

           Defendants.

Case No. 3:19-cv-01068-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff David Kelley ("Kelley") brings this action against defendants Kirkman Group, Inc. ("Kirkman") and David Humphrey ("Humphrey") (together, "Defendants") alleging fraud and promissory estoppel claims against both Defendants, and a breach of contract claim against Kirkman only. After this Court granted Defendants' motion to dismiss Kelley's complaint, Kelley filed an amended complaint (ECF No. 22), and Defendants now move to dismiss the amended complaint ("FAC"), alleging: 1) lack of personal jurisdiction over Humphrey; 2) insufficient service of process on Humphrey; 3) failure to plead claims with sufficient particularity; and 4) failure to state a claim. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge

PAGE 1 – OPINION AND ORDER

pursuant to 28 U.S.C. § 636. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

The Court outlined the relevant factual background in its opinion dismissing Kelley's original complaint:

> Kirkman is a Nevada corporation headquartered in Reno, Nevada, with an office in Lake Oswego, Oregon. Humphrey has served as Kirkman's President and Chief Executive Officer ("CEO") since 2001. Humphrey has resided in Reno, Nevada since 2010, and intends to reside there indefinitely.
>
> In the spring of 2018, Kelley approached Humphrey to discuss Kirkman. The parties decided that Kirkman should hire Kelley, and that Kelley would eventually take over as CEO. In or around September 2018, Kelley met with Humphrey and the CEO of Rosewood Private Investments ("Rosewood"), a Texas company interested in purchasing Kirkman, in Oregon to discuss Kelley's anticipated employment. On September 26, 2018, Kirkman extended an offer of employment to Kelley, contingent upon Rosewood completing its purchase of Kirkman.
>
> On or about October 1, 2018, Humphrey informed Kelley that Kirkman's deal with Rosewood was complete. Kelley left his job at Nike and began working for Kirkman in its Oregon office. On April 1, 2019, Kirkman terminated Kelley without cause.

*Kelley v. Kirkman Grp., Inc.*, No. 3:19-cv-01068-SB, 2020 WL 363389, at *1 (D. Or. Jan. 22, 2020) (citations to record omitted).

In his FAC, Kelley alleges the following timeline of Humphrey's alleged misrepresentations regarding the anticipated sale of Kirkman to Rosewood:

Statements Prior to Kelley Leaving Nike:

| | |
|---|---|
| July 20, 2018: | Kelley spoke with Humphrey by phone about Kelley's employment at Kirkman. |
| Aug. 7, 2018: | Kelley, Humphrey, and Rosewood CEO met in Lake Oswego, Oregon, for an interview. |
| Sept. 9, 2018: | Humphrey sent an offer letter to Kelley, suggesting a start date of October 1, 2018. |

PAGE 2 – OPINION AND ORDER

| | |
|---|---|
| Sept. 23, 2018: | Humphrey emailed a revised offer letter to Kelley, and an employee handbook, stating 'This is a big step for you and we will make it work together.' |
| Sept. 24, 2018: | Kelley email to Humphrey: 'When will the Rosewood/Kirkman deal be final?' **Humphrey: 'I got a time of one more week – and the time is procedural not review.'** |
| Sept. 28, 2018: | **Humphrey email to Kelley: Rosewood has 'signed off' and told Defendants to 'go ahead' with the offer to Kelley.** |
| Sept. 28, 2018: | Humphrey communicates offer of employment to Kelley ("As you know, we are concluding our agreement with the Rosewood Group in Texas and this offer is contingent on this completed agreement.") (The offer letter attached to the amended complaint is dated Sept. 26, 2018.) |
| Oct. 23, 2018: | Kelley left job at Nike. |

<u>Statements After Kelley Left Nike</u>:

| | |
|---|---|
| Oct. 29, 2018: | Kelley began working at Kirkman. |
| Nov. 9, 2018: | Paul Richardson (Rosewood) text to Kelley: deal not closed, but would close that day or on the following Monday or Tuesday. |
| Nov. 13, 2018: | Kelley text to Humphrey: 'Did you get any word from Rosewood today/tonight?' Humphrey: 'success' (with three firework emojis). |
| Nov. 13, 2018: | Richardson (Rosewood) email to Kelley, subject line 'The deal is finalized' and body of email: 'You can breathe again!' |
| Nov. 14, 2018: | Humphrey text to Kelley and leadership team: 'Good news – the deal with Rosewood is completed!!! I will announce today at noon with Asher coming out we want a very positive message that we are heading in the right direction and have the 'team' in place to be successful[.] I will talk to each of you Salud and congrats to the company[.]' Humphrey announces to company later that day that deal was final. |
| Apr. 1, 2019: | Kirkman terminates Kelley's employment. |

(FAC ¶¶ 3.5-3.16) (excerpts summarized and emphasis added).

PAGE 3 – OPINION AND ORDER

**DISCUSSION**

**I.    STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678)).

**II.    LOCAL RULE ("LR") 7-1**

Kelley argues that the Court should deny Defendants' motion as it relates to his promissory estoppel claim because defense counsel failed to disclose during conferral that Defendants would move to dismiss the promissory estoppel claim. (Pl.'s Opp. at 1-2; *see also* LR 7-1(a)(2) ("When conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion.") In response, defense counsel explains that during the telephone conferral, counsel communicated that Defendants intended to file a motion to dismiss the amended complaint and described the issues that merit dismissal, and Plaintiff's counsel "did not engage regarding the merits of the contemplated motion." (Defs.' Reply at 2.) Defense counsel notes that although counsel did not specifically discuss dismissal of Kelley's promissory estoppel claim, several of the bases for dismissal of the other claims also apply to the promissory estoppel claim. (*Id.*)

PAGE 4 – OPINION AND ORDER

Although the Court agrees that defense counsel should have disclosed that Defendants intended to seek dismissal of the promissory estoppel claim, the Court notes that Kelley has not suffered any prejudice resulting from the conferral failure because it is not likely that the promissory estoppel claim would have resolved had counsel specifically addressed the claim. Furthermore, now that the motion is fully briefed, it would be inefficient to require the parties to relitigate the same issues that have already been briefed. Accordingly, the Court will not deny the motion to dismiss the promissory estoppel claim for failure to confer, but reminds counsel that pre-filing conferral should always address "each claim, defense, or issue that is the subject of the proposed motion." LR 7-1(a)(2).

### III.  PERSONAL JURISDICTION

The Court dismissed Kelley's fraud claim against Humphrey for lack of personal jurisdiction, noting that Kelley alleged only a single meeting that Kelley had with Humphrey in Oregon, which pre-dated any of the alleged misrepresentations at issue in this case.[1] *See Kelley, 2020 WL 363389, at \*3* ("Thus, other than the fact that Kelley allegedly suffered an injury in Oregon, Kelley has alleged no forum-related contact by Humphrey relating to his alleged misrepresentation."). Defendants again move to dismiss Kelley's claims against Humphrey for lack of personal jurisdiction. (Mot. to Dismiss at 9-10.)

As discussed in the Court's prior opinion, courts analyze specific personal jurisdiction in this context using the Supreme Court's three-part "effects test," requiring that the defendant: "'(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (quoting *Calder v. Jones*, 465 U.S. 783 (1984)).

---

[1] The Court incorporates its prior opinion by reference herein.

The Supreme Court recently "made clear that we must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

In his amended complaint, the only additional relevant contacts between Humphrey and Oregon that Kelley pleads are the communications from Humphrey (not in Oregon) to Kelley (in Oregon) outlined above.[2] Even though sending an email or text message or making a phone call is an intentional act, and even though Humphrey would have known that any harm his communications caused would be suffered by Kelley in Oregon, the Court cannot conclude that Humphrey expressly aimed his communications at Oregon, as opposed to at Kelley who happened to be in Oregon. *See Morrill v. Schott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017) (concluding that the court did not have personal jurisdiction because "[a]ny links to [the forum state], which included Defendants' communications with Plaintiffs by telephone and email about the [litigation], occurred only because it happened to be where Plaintiffs resided"); *Veracities PBC v. Strand*, No. 3:19-cv-1712-SI, 2020 WL 2415679, at *5 (D. Or. May 12, 2020) ("[P]ersonal jurisdiction cannot be based on a plaintiff's connection to the forum[.]"); *Coast Equities*, 2015 WL 13333017, at *4 (holding that the defendant's email communications with the plaintiff in Oregon "failed to make a sufficient showing to establish that this court has personal

---

[2] The Court considers all of Humphrey's communications with Kelley relating to the alleged misrepresentations, but notes that only two of those communications (both emails) contained alleged misrepresentations that pre-date Kelley's departure from Nike. *See Coast Equities, LLC v. Right Buy Prop., LLC*, No. 3:14-cv-01076-ST, 2015 WL 13333017, at *5 (D. Or. Feb. 18, 2015) ("For purposes of determining whether a defendant purposefully availed itself of conducting activities in the forum, '[o]nly contacts occurring prior to the event causing litigation may be considered.'" (quoting *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990))).

jurisdiction"), *adopted by* 2015 WL 1477901 (D. Or. Mar. 15, 2015), *aff'd*, 701 F. App'x 611 (2017).

Kelley bears the burden of demonstrating that the Court's exercise of jurisdiction over Humphrey is proper here. *See Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1084 (D. Or. 2016) ("[T]he plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper."). Relying on Kelley's allegations, the Court finds that a single meeting in Oregon pre-dating Humphrey's alleged misrepresentations, and a handful of communications by email or text to Kelley in Oregon, are not sufficient minimum contacts with Oregon to confer personal jurisdiction over Humphrey.[3] *See Morrill*, 873 F.3d at 1146 ("Therefore, as in *Walden*, the forum state was only implicated by the happenstance of Plaintiff['s] residence[.]").

Accordingly, the Court grants Defendants' motion to dismiss Kelley's claims against Humphrey for lack of personal jurisdiction.[4]

## IV. BREACH OF CONTRACT CLAIM

The Court dismissed Kelley's original breach of contract claim because he did not allege facts "on the face of the complaint . . . that the condition precedent to the employment offer (i.e., the completed sale agreement) was [ever] satisfied." *Kelley*, 2020 WL 363389, at *4. Thus, "either a contract was never formed or Kirkman was not obligated to perform under the contract, and therefore Kelley has failed to state a claim for breach of contract." *Id.* (citation omitted). In the amended complaint, Kelley again fails to allege that Rosewood's purchase of Kirkman was

---

[3] If the purposeful availment test applies to evaluate personal jurisdiction with respect to Kelley's promissory estoppel claim, the Court similarly concludes that it lacks personal jurisdiction over Humphrey. *See Lil Man in the Boat, Inc. v. Auk Ta Shaa Discovery, LLC*, No. 16-cv-01471-JST, 2016 WL 6679558, at *5 (N.D. Cal. Nov. 14, 2016) (finding that the defendant's phone calls, text messages and emails negotiating the sale of a boat to the plaintiff in forum state were not enough to constitute purposeful availment).

[4] In light of the Court's ruling, the Court does not address Defendants' arguments regarding Kelley's lack of proper service on Humphrey.

PAGE 7 – OPINION AND ORDER

ever completed, nor that the condition precedent was waived or excused. (*See* FAC ¶ 4.4, alleging only that "Defendant Kirkman, and Rosewood represented to [Plaintiff] that the deal with Rosewood was complete, thereby fulfilling the condition precedent"). Kelley has not cured the deficiency in his breach of contract claim, and therefore the Court grants Defendants' motion to dismiss.

## V.     FRAUD CLAIM

The Court dismissed Kelley's original fraud claim on the ground that "Kelley has alleged the who (Humphrey), what (he misrepresented that the Rosewood sale was complete), but not the when (date), where (location), or how (e.g., in person, telephone, email, mail, or text message)." *Kelley*, 2020 WL 363389, at \*4; *see also Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) ("Claims sounding in fraud or mistake are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that such claims 'state with particularity the circumstances constituting fraud or mistake[,]'" including "the who, what, when, where, and how of the misconduct charged." (quoting FED. R. CIV. P. 9(b) and *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003))). Kelley added the when, where, and how in his amended complaint, but has failed to state a fraud claim.

"The elements necessary to establish an action for fraud are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Rice v. McAlister*, 268 Or. 125, 128 (1974) (citing *Conzelmann v. Nw. Poultry & Dairy Prods. Co.*, 190 Or. 322 (1950)).

Kelley alleges here that Defendants "repeatedly represented that the deal between Kirkman and Rosewood was finalized" (FAC ¶ 5.2), and Kelley relied on Defendants'

PAGE 8 – OPINION AND ORDER

representations and left Nike to work for Kirkman (FAC ¶ 5.10). However, Kelley pleads only two statements by Defendants relating to the finality of the sale that occurred prior to his decision to leave Nike: (1) Humphrey's September 24, 2018, email to Kelley about when Humphrey *anticipated* the sale would be final ("I got a time of one more week – and the time is procedural not review") and (2) Humphrey's September 28, 2018, email to Kelley, suggesting that Rosewood had "signed off" on the deal and told Defendants to "go ahead" with the employment offer to Kelley. (FAC ¶¶ 3.7, 3.9.) Neither alleged statement supports Kelley's conclusory allegation that Defendants "repeatedly represented that the deal between Kirkman and Rosewood was finalized." (FAC ¶ 5.2.) In addition, Kelley does not allege that Humphrey's September 24 and 28, 2018, statements were otherwise false. *See Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").

Kelley points to additional representations about the finality of the sale while he was employed at Kirkman, but the Court agrees with Defendants that these statements do not save Kelley's fraud claim even if the statements were false. Any statements Defendants made after Kelley left Nike to begin working at Kirkman could not have induced him to leave his prior employment, and Kelley has not alleged any harm resulting from the post-hire statements. *See* FAC at 8 (pleading damages for lost salary, lost medical coverage, a lost incentive program, and lost stock options, all resulting from separating employment at Nike).

It appears that Kelley left Nike to work at Kirkman based on Defendants' optimism that Kirkman's sale to Rosewood would close, but it never did. Kelley has not pled with particularity any statements that Defendants made to Kelley before he left Nike that the sale was, in fact, final, nor any damages resulting from the alleged post-hire misrepresentations. As a result, Kelley has failed to state a fraud claim.

PAGE 9 – OPINION AND ORDER

## VI.  PROMISSORY ESTOPPEL CLAIM

In his amended complaint, Kelley adds a promissory estoppel claim, also premised on his allegation that Defendants promised him a job at Kirkman conditioned on the final sale, and represented that the sale to Rosewood was final. (FAC ¶¶ 6.1-6.5.) However, as discussed above, Kelley has not pled with particularity any statements that Defendants made to Kelley about the finality of the sale prior to Kelley leaving Nike, nor any damages resulting from the alleged post-hire misrepresentations. For the same reasons discussed above, the Court grants Defendants' motion to dismiss the promissory estoppel claim.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss Kelley's claims against Humphrey for lack of personal jurisdiction, and GRANTS Defendants' motion to dismiss Kelley's claims against Kirkman for failure to state a claim (ECF No. 23). The Court dismisses with prejudice the claims against Humphrey, and the fraud and promissory estoppel claims relating to the pre-November 2018 statements.[5]

///

///

///

///

---

[5] *See Dennis v. Wells Fargo Bank, N.A.*, No. 3:18-cv-1049-SI, 2019 WL 1867923, at *2 (D. Or. Apr. 25, 2019) (dismissing with prejudice where "[t]he Court gave Plaintiffs leave to amend their prior complaint in the event that they could overcome the deficiencies in their earlier pleadings" and "[t]he amended complaint does not overcome those deficiencies, and the Court does not have reason to believe Plaintiffs could state a plausible claim if given leave to amend again"); *Lamont v. Petrucelli*, No. 18-cv-02790-BLF, 2018 WL 4378768, at *1 (N.D. Cal. July 12, 2018) ("Because Plaintiff has failed to demonstrate the existence of personal jurisdiction over Defendant despite being given two opportunities to do so, and because it appears that further amendment would be futile, the Court agrees . . . that it is appropriate to dismiss the case with prejudice at this time.").

PAGE 10 – OPINION AND ORDER

If Kelley believes he can state a fraud or promissory estoppel claim based on the alleged November 2018 statements only, or a breach of contract claim premised on Kirkman's waiver of the condition precedent, he may file a second amended complaint by August 6, 2020.

**IT IS SO ORDERED.**

DATED this 23rd day of July, 2020.

*/s/ Stacie F. Beckerman*

STACIE F. BECKERMAN
United States Magistrate Judge

PAGE 11 – OPINION AND ORDER